## Baker v. Conlan
*[Cite as 2 AOA 6]*

*Case No. C-880630*
*Hamilton County, (1st)*
*Decided March 14, 1990*

R.C. 1707.41
Civ. R. 8(A)
Civ. R. 9(B)
Civ. R. 41(B)

*Spraul, Reyering & Cronin and Terrence M. Veith, Esq., 505 Gwynne Building, 602 Main*

*Street, Cincinnati, Ohio 45202, for Plaintiffs–Appellees,*

*Greer & Fisse and Lawrence R. Fisse, Esq., 55 West Main Street, Batavia, Ohio 45103, for Defendants-Appellants.*

*Per Curiam.*

This cause came on to be heard upon the appeal, the transcript of the docket, journal entries and original papers from the Hamilton County Court of Common Pleas, the transcript of the proceedings, the briefs and the arguments of counsel.

Defendants-appellants John Conlan and Shawnee Capital Corporation ("Shawnee") appeal from the judgment entered against them in the Hamilton County Court of Common Pleas in an action seeking damages for fraud. Conlan and Shawnee assert that the judgment is against the manifest weight of the evidence and claim in addition that the trial court erred by failing to grant their motions for summary judgment and involuntary dismissal. A review of the entire record shows that none of their claims merit reversal of the trial court's judgment.

The fraud alleged in this case concerns the sale of limited-partnership interests to plaintiffs-appellees John Conners, E. G. Frank, Harold M. Saunders, and Dr. Raymond H. Johnson (collectively, the "investors") in a limited partnership known as "Falina Angel Partners." The purpose of Falina Angel Partners was to purchase a mare, Falina Angel, for breeding with a stallion called "State Dinner," so that the offspring could be sold for a return on the investment.

Shawnee and Killarney Breeding Sales, Inc. ("Killarney") were listed as general partners in the limited partnership's prospectus. John Conlan was president of Shawnee and, although the subject of contention, its director. Killarney was closely held by defendants Paul M. LaLonde and his father, Gregory T. LaLonde. Plaintiff-appellee Nancy O. Baker was hired to market limited-partnership share for the partnership.

The fraud in question arose from the dissemination of the partnership's prospectus, which contained several alleged misrepresentations and omissions that induced the investors to subscribe to the partnership. The prospectus failed to note the existence of various agister's and stud-fee liens placed on Falina Angel prior to the partnership's intended purchase of the horse from her owner, Paul

LaLonde. Other information concerning Paul LaLonde that was omitted from the document involved two pages of an attachment to Paul LaLonde's financial statement which had originally been included in the prospectus when it was approved by the Ohio Division of Securities. Further, the prospectus at no time included any mention that Paul LaLonde had previously been convicted of bank fraud. The plaintiffs also alleged that the prospectus misrepresented Killarney and Paul LaLonde's willingness or ability to purchase any outstanding shares in the partnership if they remained unpurchased after a certain date, and that it further misrepresented the extent of liability faced by the general partners.

The partnership quickly failed when foreclosure proceedings against Paul LaLonde resulted in the Scott County, Kentucky, Sheriff taking custody of Falina Angel, and when Conlan and Shawnee issued a check against insufficient funds in payment of a stallion share in State Dinner which would have allowed Falina Angel to be bred with the stallion.

After learning of the partnership's setbacks, the plaintiffs demanded the return of their investment, and shortly thereafter filed a seven-count complaint alleging fraud and securities violations by Killarney and Paul and Greg LaLonde, and by Shawnee and John Conlan. Before trial, Shawnee and John Conlan filed a joint motion for summary judgment under Civ. R. 56, based on an absence of facts showing their participation in or awareness of the fraud perpetrated by Killarney and LaLonde, and on the lack of specificity with which the fraud counts were pleaded. The motion was overruled and the parties proceeded to trial. After the plaintiffs concluded their case, Conlan and Shawnee moved for and were denied an involuntary dismissal under Civ. R. 41(B) (2) on grounds similar to those underpinning their motion for summary judgment. At the conclusion of the trial, the trial court found that John Conlan and Shawnee Capital were indistinguishable, that they had recklessly failed to exercise due diligence in the preparation of the prospectus, and that the investors were entitled to damages from Conlan and Shawnee, under the Ohio Securities Act, R.C. Chapter 1707, in an amount equal to their original investment of $14,000 each.

In their first assignment of error, Conlan and Shawnee challenge the trial court's failure to grant summary judgment in their favor. Conlan and Shawnee argue that the plaintiff's complaint was insufficient to set forth either a common-law or statutory claim for fraud, and that the claims otherwise failed as a matter of law because no material facts were at issue. We do not agree with either contention.

Under the apparently competing directives of Civ. R. 8(A), which requires that a "pleading which sets forth a claim for relief * * * contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief," and Civ. R. 9(B), which requires that in "all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity," the determination of the appropriate degree of specificity in the assertion of a claim of fraud must be made on a case-by-case basis. *See F & J Roofing Co. v. McGinley & Sons, Inc.* (1987), 35 Ohio App. 3d 16, 518 N.E.2d 1218. The underlying determination in each case is whether the allegation is specific enough to inform the defendant of the act of which the plaintiff complains, and to enable the defendant to prepare an effective response and defense. *Id., citing Haddon View Investment Co. v. Coopers & Lybrand* (1982), 70 Ohio St. 2d 154, 436 N.E.2d 212. The "circumstances constituting fraud" to which Civ. R. 9(B) refers normally include the time, place and content of the false representation, the fact misrepresented, and the nature of what was obtained or given as a consequence of the fraud. *F & J Roofing Co., supra* at 17, 518 N.E.2d at 1220, citing 2A Moore's Federal Practice (1986), Paragraph 9.03, at 9-20 to 9-24.

Count six of the complaint alleges that Conlan and Shawnee, among others, fraudulently induced each of the investors to invest $14,000 in the partnership, that various misstatements of fact were made by the defendants, that the investors relied on the statements, and that the investors would not have purchased their interests had the statements not been made. Preceding counts of the complaint, restated in the sixth count "as if fully rewritten," allege that plaintiffs Conners, Frank Saunders and Dr. Johnson were investors who purchased limited-partnership units of the partnership; that the partnership's prospectus was registered with the Ohio Division of Securities and stated a specific purpose to acquire Falina Angel and a stallion share in State Dinner; that the defendants fraudulently represented that they were financially able to complete the venture; that Paul LaLonde owned Falina Angel free of any substantial liens; and

that they intended to purchase a stallion share in State Dinner. Although the complaint does not allege that the prospectus omitted portions of Paul LaLonde's financial statement of failed to mention his prior convictions, or that the prospectus misstated the nature of the general partners' liability, the complaint was nevertheless sufficient to apprise Conlan and Shawnee of the acts of which the investors complained, and to permit them to prepare an effective response and defense.

Conlan and Shawnee also argue that the complaint was insufficient under Civ. R. 8(A) because it failed to set forth all of the necessary elements of common-law or statutory fraud, under *Fancher v. Fancher* (1982), 8 Ohio App. 3d 79, 455 N.E.2d 1344. As this court stated in *Fancher,* however, a complaint which does not contain direct allegations on every material point of the legal theory to sustain a recovery will nevertheless be deemed sufficient if it contains "allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Fancher, supra* at 83, 455 N.E.2d at 1348. We hold that the allegations noted above supported the inference that evidence would be adduced at trial that Conlan and Shawnee either knowingly or with reckless disregard misrepresented facts that were material to the transaction, in accord with *Fancher* and the common-law elements of fraud as set forth in *Burr v. Stark Cty. Bd. of Commrs.* (1986), 23 Ohio St. 3d 69, 491 N.E.2d 1101. Similarly, any elements of statutory fraud under R.C. 1707.41 not directly stated in the complaint, such as the identity of the offeror, are fairly susceptible to the inference that evidence of such elements would be adduced at trial. A section or chapter of the Revised Code need not be cited to uphold the formal validity of a complaint based on that statute. *Society Natl. Bank v. Kienzle* (1983), 11 Ohio App. 3d 178, 463 N.E.2d 1261.

Conlan and Shawnee also argued at trial that there existed no genuine issue of material fact to be litigated, and now assert that the trial court erred by refusing them summary judgment. A review of the record, including the various depositions filed with the trial court, shows this contention not to be well taken. Conlan's own deposition indicates that he failed to exercise due diligence in the preparation of the prospectus, and there was an actual dispute on almost all of the major issues between the parties. We therefore cannot say that the trial court erred in refusing summary judgment. See

*Temple v. Wean United, Inc.* (1977), 50 Ohio St. 2d 317, 364 N.E.2d 267. Accordingly, Conlan and Shawnee's first assignment of error is overruled.

Conlan and Shawnee's second assignment of error is addressed to the trial court's refusal to grant their motion for involuntary dismissal pursuant to Civ. R. 41(B) (2), made at the conclusion of the plaintiffs' case-in-chief. Conlan and Shawnee claim that the trial court's ruling was erroneous as a matter of law and against the manifest weight of the evidence because the plaintiffs failed to prove all the elements of either common-law or statutory fraud by a preponderance of evidence. See Janell, Inc. v. Woods (1980), 70 Ohio App. 2d 216, 435 N.E.2d 1138. In particular Conlan and Shawnee claim that no evidence was adduced at trial to show the identity of the person or entity actually offering the securities for sale, and that the trial court based Conlan's liability solely on his preparation of the prospectus. By their argument, Conlan and Shawnee imply that liability under R.C. 1707.41 does not extend beyond the person or entity actually making the offer or receiving the profits accruing from such sale -- in this instance, the partnership. We do not agree.

R.C. 1707.41 provides, in pertinent part:

"In addition to other liabilities imposed by law *any person who,* by a written or printed circular, prospectus, or advertisement, *offers any security for sale, or receives the profits accruing from such sale, is liable,* to any person who purchased such security relying on such circular, prospectus, or advertisement, for the loss or damage sustained by such relying person by reason of the falsity of any material statement contained therein or for the omission therefrom of material facts, unless such offeror or person who receives the profits establishes that he had no knowledge of the publication thereof prior to the transaction complained of, or had just and reasonable grounds to believe such statement to be true or the omitted facts to be not material.

"Whenever a corporation is so liable [for a violation of this section], each director of the corporation is likewise liable unless he shows that he had no knowledge of the publication complained of, or had just and reasonable grounds to believe the statement therein to be true or the omission facts to be not material. * * * Lack of reasonable diligence in ascertaining the fact of such publication or the falsity of any statement contained in it or of the omission of

such material fact shall be deemed knowledge of such publication and of the falsity of any untrue statement in it or of the omission of material facts." [Emphasis added.]

Although there is little Ohio case law determining the scope of liability under this statute,[1] we are convinced that its terms provide for the liability of corporate directors who have failed to use due diligence in reviewing or preparing a publication. We are further persuaded, despite the explicit reference only to corporations and not to limited partnerships, that the statute extends to corporations acting as general partners of an "offering" entity, and imposes liability upon those directors who fail to use due diligence in preparing or making an offer or sale of securities. The Ohio Securities Act, being a remedial law, should be construed liberally to provide relief to the victims of fraud it is designed to protect. R.C. 1.11; *State V. American Equitel Corp.* (1979), at 24, 14 O.O 3d at 57, 395 N.E.2d at 1355. This protection would be rendered meaningless if, in the instant case, the investors' recovery were limited to the now defunct and empty partnership, in disregard of the significant roles Shawnee and Conlan played in the partnership.

It can be fairly inferred from the record that Conlan acted in the capacity of a director of Shawnee.[2] Both were properly held to be liable under R.C. 1707.41 either as a general partner of the entity making the offer and sale of securities or as the director of that entity. Alternatively, competent evidence was adduced at trial to show that Shawnee had received some of the proceeds from the investors, and was therefore liable as a recipient of the "profits accruing from" the sales. R. C. 1707.41.

Our conclusion as the Shawnee and Conlan's liability is buttressed by reference to statutes providing for civil liability, similar to R.C. 1707.41. Section 12(C) of the Securities Act of 1933 provides that:

"[a]ny person who * * * *offers or sells* a security * * * by the use of * * * interstate commerce * * * by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission, shall be liable to the person purchasing such security from him who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security." Section 771, Title 15, U.S. Code. [Emphasis added.]

This statute and a similar section of Connecticut's Blue Sky Law, Conn. Gen. Stat. 36-498(9), were held in *Capri v. Murphy* (C.A. 2, 1988), 856 F.2d 473, to apply to the general partners of a limited partnership, making them liable to purchasers of limited-partnership interests even absent the general partners' direct communication with the investors. In *Capri,* the general partners had prepared and circulated a prospectus which omitted material facts affecting the risk of the investment. The general partners were deemed "sellers" under the test, recently enunciated in *Pinter v. Dahl* (1988), 486 U.S. 622, ___ , 108 S. Ct. 2063, 2081, of whether the buyer, "in any meaningful sense, 'purchas[ed] the security from' such a person."

The instant record demonstrates that, as in *Capri,* Conlan and Shawnee's involvement in the preparation of the prospectus exceeded that of accountants and lawyers who have merely provided professional services while assisting in the preparation of a prospectus. We find that the investors, in a meaningful sense, purchased their interests from Conlan and Shawnee.

Conlan and Shawnee also assert that involuntary dismissal should have been granted them because, at the time the motion was made, no evidence of Conlan's failure to use due diligence was before the court. Although Conlan later testified in this regard as a part of the defendants' case, the only other evidence of Conlan's efforts before the court at the time of the motion was Conlan's own deposition previously submitted to and considered by the court upon defendants' motion for summary judgment. We hold this material to have been a sufficient basis to deny Shawnee and Conlan's Civ. R. 41(B) motion.

Civ. R. 41(B) (2) provides that a defendant, after the completion of the plaintiff's case in a bench trial, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the

close of all the evidence. A trial court's deferral of judgment will not be set aside unless it is shown to be an abuse of discretion. *Janell, Inc. v. Woods* (1980), 70 Ohio App. 2d 216, 435 N.E.2d 1138.

It has been noted the purpose of this rule is one of judicial economy, allowing a trial judge sitting as the trier of fact to avoid needless litigation if the plaintiff has failed to satisfy its burden at the close of its case. *Central Motors Corp. v. Pepper Pike* (1979), 63 Ohio App. 2d 34, 409 N.E.2d 258. As stated in *Central Motors* "there is no presumption that later in the trial the defendant will offer more substantial evidence in the plaintiff's favor than the plaintiff has offered." *Id.*, at 49, 409 N.E.2d at 271.

In this case, however, such a presumption by the trial judge may have been warranted in light of the defendant's previously submitted deposition which showed that he had failed to exercise due diligence in the preparation of the prospectus. Consideration of the deposition as evidence would have been improper without providing either party the opportunity to object after notice of its filing by the other party under Civ. R. 32(B). In this case, however, the deposition had been filed and notice of such fact given to the parties. The deposition had been previously considered by the trial court in deciding the motion for summary judgment, and it therefore remained in the case for further consideration in deciding whether continuation of the trial would result in additional, substantial evidence being entered in the plaintiff's favor. As it turned out, when Conlan proceeded to testify for the defense, his answers on cross-examination showed that he had done little, if anything, to verify the information included the prospectus, or to ascertain the existence of material facts omitted from the document. We therefore are unable to say that the trial court abused its discretion in denying Conlan and Shawnee's motion for involuntary dismissal. Accordingly, we overrule Conlan and Shawnee's second assignment of error.

Conlan and Shawnee's third assignment of error challenges the trial court's judgment and findings of fact and conclusions of law as being against the manifest weight of the evidence. We do not find the assignment to be well taken.

In a civil case:

"[j]udgments supported by some competent, credible evidence going to all essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C. E. Morris Co. v. Foley Construction Co.* (1978), 54 Ohio St. 2d 279, 376 N.E.2d 578, syllabus.

We have carefully reviewed the record before us[3] and find there to be competent, credible evidence going to all the essential elements of the case, including the materiality of the omissions and misstatements of fact made in the prospectus, and Conlan's personal participation in the partnership and his involvement as Shawnee's director. The requisite degree of knowledge may be deemed proved under R.C. 1707.41 by showing a lack of reasonable diligence in ascertaining the falsity of any statement contained in, or the omission of material fact from, a fraudulent publication. The record demonstrates Conlan's lack of reasonable diligence. The third assignment of error is, accordingly, overruled.

The judgment of the trial court is therefore affirmed.

*Judgment affirmed.*

DOAN P. J., KLUSMEIER and UTZ, JJ.

————

[1] Liability under a companion statute, R.C. 1707.44, has previously been held to extend to directors of a corporation who, in the exercise of reasonable diligence, should have acquired knowledge of a material misstatement or omission of fact contained in a prospectus. *See State v. American Equitel Corp.* (1979), 60 Ohio Misc. 7, 395 N.E.2d 1355. In extending liability to the directors of the offending corporation, the referee's report adopted in the *American Equitel* case noted that R.C. 1707.41 permits imposition of civil liability on directors of corporations who fail to use reasonable diligence in ascertaining the veracity of a prospectus. The court in *American Equitel* was, in fact, presented only with the application of R.C. 1707.44, which forbids any person to "knowingly make or cause to be made" a misrepresentation in a prospectus, but does not contain the limitation contained in R.C. 1707.41 that recovery be had only against one who "offers" or receives the profits from the sale. See, also, *Leeth v. Decorator's Mfg. Inc.* (1979), 67 Ohio App. 2d 29, 425 N.E.2d 920.

[2] Little evidence of the relationships between Conlan and Shawnee was adduced at trial. Conlan testified that at the time of trial he was "self-employed as a real estate broker doing business as Shawnee Capital Brokers," T.p., June 21, 1988, at 3, and admitted in his answer to plaintiff's complaint that he was president of Shawnee Capital Corporation. T.d. 20. Although we do not consider this evidence sufficient to support the trial court's piercing of the "corporate veil" as a basis for Conlan's liability, when considered in the light of his admission in deposition that he

was the corporation's sole director, T.d. 31, at 76, the evidence contained in the record does support his liability as a director under R.C. 1707.41.

[3] It appears from the partial transcript of the record certified to us that a number of exhibits were marked for identification by the parties, but it does not appear that any of those exhibits were moved into evidence. Those exhibits therefore cannot be considered because they are not properly before us.

To the extent such exhibits were moved into evidence but notation of such fact was omitted from the transcript, no objection to the omission was raised by the appellee pursuant to App. R. 9(B).